**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA—ORLANDO DIVISION**

|  |  |
|---|---|
| ARAMIS AYALA, | |
| *Plaintiff,* | No. _____ |
| v. | |
| RICHARD L. SCOTT,<br>IN HIS OFFICIAL CAPACITY AS<br>GOVERNOR OF FLORIDA AND IN HIS<br>INDIVIDUAL CAPACITY, and | |
| BRAD KING,<br>IN HIS OFFICIAL CAPACITY AS<br>STATE ATTORNEY FOR THE<br>FIFTH JUDICIAL CIRCUIT, | |
| *Defendants.* | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND JURY DEMAND**

1.      Plaintiff Aramis Ayala—the democratically elected State Attorney for

Orange and Osceola Counties—hereby files suit seeking injunctive and declaratory relief

against Defendant Richard L. Scott in his official capacity as Governor of Florida and in

his individual capacity, as well as against Defendant Brad King in his official capacity as

State Attorney for the Fifth Judicial Circuit.  Scott violated the Constitution of the United

States, usurped Ayala's authority, and deprived voters in the Ninth Judicial Circuit of

their chosen State Attorney when, under color of law, he removed Ayala from 23 pending

homicide cases in her circuit and replaced her with King, a State Attorney who was not

elected by voters from Orange and Osceola Counties.  The Governor did not take this

drastic step because of any misconduct on Ayala's part, but simply because he disagreed with her reasoned prosecutorial determination not to seek the death penalty under current circumstances.  Governor Scott, through his office, has acknowledged that "state attorneys operate independently, and as elected officials, *they answer only to the voters of their individual jurisdictions*" (emphasis added).  Yet Defendants deprived the voters of Ayala's jurisdiction of the benefit of their votes—and violated Ayala's constitutional rights—when they assumed the authority to veto the prosecutorial discretion of an independent elected official.

## JURISDICTION AND VENUE

2.      This action arises under the Constitution and Laws of the United States, specifically the Equal Protection and Due Process Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983.  This Court has original jurisdiction under 28 U.S.C. § 1331.

3.      This Court has authority to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  The Court has authority to order injunctive relief under the All Writs Act, 28 U.S.C. § 1651.  The Court has authority to award reasonable attorneys' fees under 42 U.S.C. § 1988(b).

4.      This Court possesses personal jurisdiction over the Defendants because they are residents of the State of Florida and are therefore subject to the Court's general jurisdiction.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this action occurred in this District.

## PARTIES

6.      Plaintiff Aramis Ayala is the State Attorney for Florida's Ninth Judicial Circuit and a registered voter in that Circuit.

7.      Defendant Richard L. Scott is the Governor of Florida.

8.      Defendant Brad King is the State Attorney for the Fifth Judicial Circuit of Florida, including Citrus, Hernando, Lake, Marion, and Sumter Counties.  He was not elected by the voters of the Ninth Judicial Circuit.  Upon information and belief, he is not a voter in the Ninth Judicial Circuit.  Upon information and belief, King is a well-known supporter of the death penalty.  In January 2016, King testified before the Florida Legislature in opposition to legislation authorizing the death sentence only when juries unanimously recommend it, arguing that requiring unanimity would make death sentences too difficult to obtain.  While the Legislature passed language similar to that advocated by King, the Florida Supreme Court later found that language unconstitutional.

## FACTS

9.      This dispute arises out of Scott's decision to sign executive orders purporting to remove Ayala as the prosecutor—first in a high-profile homicide case and then in 22 additional homicide cases pending in her circuit—because he disagreed with her prosecutorial judgment not to seek the death penalty under current circumstances.

**A.      Ayala's Election as State Attorney.**

10.      The Florida Constitution provides that "[i]n each judicial circuit a state attorney shall be elected for a term of four years," and that "the state attorney shall be the prosecuting officer of all trial courts in that circuit[.]"  Art. V, § 17, Fla. Const.  The State

Attorney must be a Florida voter and must reside in the territorial jurisdiction of her judicial circuit.

11.     In November 2016, the voters of Orange and Osceola Counties overwhelmingly elected Ayala as State Attorney for the Ninth Judicial Circuit.  Ayala defeated the incumbent by more than 13 percentage points in the Democratic primary and received 99.7 percent of the vote in the general election.  She took office on January 3, 2017.

12.     This election made Ayala the first African-American State Attorney in Florida history.

13.     During the campaign, Ayala emphasized her experience both as a former prosecutor and former public defender.  She explained to the voters in her circuit that "[t]he State Attorney is one of the gatekeepers to our justice system.  We need someone with integrity and a fresh vision to lead."  Ayala stressed that police "want to know they're being cared for and protected" and that "[c]ertain communities want to know that their cries are heard."

14.     As State Attorney, Ayala is a quasi-judicial officer charged with ensuring that "every defendant receive[s] a fair trial."  *Frazier v. State*, 294 So. 2d 691, 692 (Fla. Dist. Ct. App. 1974).  Florida law gives her "absolute" discretion "in deciding whether and how to prosecute."  *State v. Cain*, 381 So. 2d 1361, 1367 (Fla. 1980).

**B.      The Murders of Sade Dixon and Lt. Debra Clayton.**

15.      On December 13, 2016, Sade Dixon—a pregnant, 24-year-old mother of two—was shot and killed along with her unborn child.  Dixon's 26-year-old brother Ronald Stewart was also shot while trying to help his sister.

16.      Investigators identified Markeith Loyd—Dixon's former boyfriend and the father of her unborn child—as a suspect.

17.      On January 9, 2017, a witness approached 42-year-old Orlando Police Lieutenant Debra Clayton and pointed out someone believed to be Loyd.  Clayton was a 17-year veteran of the police department, a mother, and a community activist.  She approached the suspect, and moments later he shot her multiple times, killing her as she lay on the ground.

18.      Loyd was arrested on January 17, 2017.  During the arrest, he was blinded in one eye and sustained other injuries.

19.      Ayala's office and the Orlando Police Department conducted an extensive investigation.  On February 15, 2017, based on facts presented by Ayala's office, the grand jury returned an indictment charging Loyd with first-degree murder and related offenses for the killing of Dixon, and a separate indictment charging Loyd with first-degree murder and related offenses for the killing of Clayton.  (Attached hereto as Exhibits 1 and 2).

C.     **Ayala's Decision Not to Seek the Death Penalty in Loyd's Case or Certain Others.**

20.     Earlier in her career as an Assistant State Attorney, Ayala had been willing to seek a death sentence in an appropriate case, and she held that belief throughout her campaign for State Attorney.

21.     However, although Florida law grants State Attorneys the authority to seek the death penalty in first-degree murder cases where aggravating factors are present, neither the Florida Constitution nor the Florida Criminal Statutes require them to do so.

22.     The decision whether to seek the death penalty remains committed to the discretion of the State Attorney.

23.     State Attorneys across Florida often decide to not seek the death penalty though presented with capital felonies and aggravators.

24.     After extensively researching the relevant law, as well as the facts of the Loyd case, Ayala determined that she would seek a sentence of life without the possibility of parole in Loyd's case, not a sentence of death.

25.     Separately from building her case against Loyd, Ayala began formulating her office's policy for handling death-eligible cases generally.

26.     She reviewed research showing that the death penalty:

    a.   has no positive impact on public safety;

    b.   is racially discriminatory;

    c.   discriminates against the poor;

    d.   is enormously expensive;

    e.   leaves victims' families in a state of uncertainty; and

f.   is imposed on innocent people too often.

27.     She also met with victims' families, reviewed files from other cases, and spoke with other people involved with the criminal justice system.

28.     On March 16, 2017, Ayala publicly announced her decision not to seek death in Loyd's case, or upcoming cases as long as the current conditions surrounding capital punishment prevailed.  She explained that "[w]hat has become abundantly clear through this process is that while I currently do have discretion to pursue death sentences, I have determined that doing so is not in the best interest of this community or the best interest of justice."  (Attached hereto as Exhibit 3).

29.     Ayala placed special emphasis on how her decision would affect victims' families.  She recognized that her decision would have "grave consequences for victims' families," but ultimately determined that "the death penalty traps many victims, families in a decades-long cycle of uncertainty" and that a decision not to pursue the death penalty would "offer families of the victims more closure and more certainty."

30.     During the press conference announcing her decision, Ayala responded to questions from the press, confirming that her decision was the result of a reasoned evaluation of the circumstances and that she was not categorically refusing ever to seek a death sentence.  Those responses included:

- "There may be cases, even active ones, [in which] I think death penalty may be appropriate because of the egregiousness of the offense."

- "If the death penalty system was one that, again, did not drag out for years and years, decades and decades, if the death penalty was one that didn't take victims' families through this whole entire process . . . we would revisit this issue."

- "If there was a possibility that we could speed up the process, not drag victims through this process where it's grueling, if we could eliminate the costs that citizens have to go through, if we could do all those things, I would absolutely feel that it would be properly administered, and if I believed or had any credible evidence that it caused [*sic*] more harm on this community or the wonderful law enforcement officers who serve us, I would absolutely change my mind."

**D.    Scott Reacts to Ayala's Prosecutorial Judgment.**

31.    Scott reacted precipitously to Ayala's decision not to seek the death penalty.  On March 16, before Ayala's announcement, Ayala called Scott and Scott asked her to recuse herself from the Loyd case.  She refused and asked him for the opportunity to explain her position.  He declined and ended the call after less than 30 seconds.

32.    Later that same day, following Ayala's press announcement, the Governor signed Executive Order 17-66—purportedly under the authority of Florida Statutes Section 27.14—removing Ayala as the prosecutor in Loyd's case, and replacing her with Brad King, the State Attorney for the Fifth Judicial Circuit, who was not elected by voters from Ayala's circuit.  (Attached hereto as Exhibit 4).

33.    Section 27.14 provides, in part, that

If any state attorney is disqualified to represent the state in any investigation, case, or matter pending in the courts of his or her circuit or if, for any other good and sufficient reason, the Governor determines that the ends of justice would be best served, the Governor may, by executive order filed with the Department of State, either order an exchange of circuits or of courts between such state attorney and any other state attorney or order an assignment of any state attorney to discharge the duties of the state attorney with respect to one or more specified investigations, cases, or matters, specified in general in the executive order of                                        the                                        Governor.

§ 27.14(1), Fla. Stat. (2016).

34.     This language was adopted in 1905, when the Florida Constitution provided for gubernatorial appointment of State Attorneys.

35.      However, the people of Florida subsequently amended the Constitution to require democratically elected State Attorneys, and the Florida Supreme Court has held that the "voice of the people expressed in the constitution is the supreme law of the land . . . ."  *City of Daytona Beach v. Harvey*, 48 So. 924, 295 (Fla. 1950).

36.     The Governor's Executive Order mischaracterized Ayala's careful weighing of the circumstances.  Whereas Ayala carefully weighed the specifics of the Loyd case and the presence of aggravators against the totality of the circumstances regarding the death penalty and determined that in the interests of justice the death penalty was currently inappropriate *despite* serious circumstances, the Executive Order states that Ayala decided not to seek the death penalty "*regardless* of circumstances of [the] capital felonies charged and *without regard* for the presence of applicable statutory aggravators[.]"

37.     The Governor wrote, without any elaboration, that "the ends of justice will best be served and there is good and sufficient reason to order the assignment of another state attorney to discharge the duties of State Attorney ARAMIS D. AYALA with respect to the investigation and prosecution of Markeith Loyd[.]"

38.     A press statement published the same day on the Governor's official website made clear that the Governor's "good and sufficient reason" was nothing more than a naked political disagreement over Ayala's exercise of prosecutorial discretion.  "I want to be very clear," the Governor wrote, "Lt. Debra Clayton was executed while she

was laying [*sic*] on the ground fighting for her life.  She was killed by an evil murderer who did not think twice about senselessly ending her life.  *I completely disagree with State Attorney Ayala's decision and comments . . . .*"  (emphasis added).  The Governor concluded that Ayala "has made it abundantly clear that she will not fight for justice for Lt. Debra Clayton and our law enforcement officers who put their lives on the line every day."

**E.     Scott Abruptly Removes Ayala from 22 Additional Homicide Cases in her Circuit.**

39.     On April 3, 2017, the Governor issued an additional 21 executive orders removing Ayala from 21 pending homicide cases in her circuit, and replacing her with King.  (Attached hereto as Exhibit 5.)  These included six cases in which the defendant had been indicted for first-degree murder and Ayala's office had already filed a notice of intent to seek death, and 15 cases in which a defendant had already been sentenced to death, but for whom a resentencing had been ordered following a Supreme Court case holding Florida's death sentence unconstitutional.

40.     Each of these 21 Executive Orders contained identical recitals alleging that "newly-elected State Attorney ARAMIS D. AYALA publicly announced her blanket opposition to seeking the imposition of the death penalty in all pending and future capital felonies without consideration of the circumstances of the offense and without regard for the presence of applicable statutory aggravators warranting the death penalty" and that "the unequivocal statements of State Attorney ARAMIS D. AYALA raise grave concerns regarding her willingness to abide by and uphold the uniform application of the laws of the State of Florida[.]"

41.     In a news release posted on his official website later that day, the Governor stated that "Ayala's complete refusal to consider capital punishment for the entirety of her term sends an unacceptable message that she is not interested in considering every available option in the fight for justice."

42.     On April 6, Governor Scott signed yet another Executive Order removing Ayala from one more capital homicide case pending in her office, and replacing her with King.

43.     The Governor did not contact Ayala before issuing the 21 April 3 or the one April 6 Executive Orders, nor did he give Ayala an opportunity to explain her position.  Instead, Ayala learned about these Executive Orders from media reports.

44.     Upon information and belief, Governor Scott chose King as Ayala's replacement because of King's well-known public position in support of the death penalty.  Thus, upon information and belief, Governor Scott's decision to remove Ayala was motivated by a specific desire to influence the course of capital prosecutions in Ayala's circuit, regardless of Ayala's prosecutorial judgment.

**F.     Subsequent Proceedings.**

45.     Following Executive Order 17-66, on March 20, Ayala sought a stay of the Governor's Executive Order during a previously scheduled hearing in the Loyd case before the Honorable Frederick J. Lauten of the Ninth Judicial Circuit Court.  Judge Lauten scheduled another hearing for March 28.

46.     On March 28, 2017, Judge Lauten denied Ayala's request for a stay.

47.     On April 3, 2017, King did as Scott wanted and filed notice that he would be seeking the death penalty against Loyd.

48.     Ayala has fully cooperated with King.

49.     As of this filing, Loyd is representing himself, but Judge Lauten is considering his request for counsel.

## COUNT I
### Violation of Equal Protection—All Writs Act

50.     Ayala incorporates paragraphs 1 through 49 by reference as if fully set forth herein.

51.     The Fourteenth Amendment to the Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

52.     The Florida Constitution gives each voter in Florida the right to elect the State Attorney for the judicial circuit in which she lives.

53.     Ayala is a voter in the Ninth Judicial Circuit who voted in the November 2016 election.

54.     By replacing Ayala with King, who was not elected State Attorney for the Ninth Judicial Circuit, in pending homicide cases, the Executive Orders deprive Ninth Circuit voters, including Ayala, of the right to elect their own State Attorney and give disproportionate weight to the voters in King's Fifth Judicial Circuit.

55.     By depriving Ayala of an equal vote for State Attorney in her judicial circuit, the Executive Orders violate the Fourteenth Amendment's guarantee of equal protection.

56. To the extent that Fla. Stat. § 27.14 purports to authorize the Executive Orders, it is unconstitutional and void.

57. Because the Executive Orders are unconstitutional, Ayala seeks an injunction ordering the Governor to reinstate Ayala as the prosecutor in all cases from which she has been removed and enjoining him from replacing her with any other state official. Ayala also seeks an injunction against King ordering him not to assume Ayala's duties.

**COUNT II**
**Violation of Equal Protection—42 U.S.C. § 1983**

58. Ayala incorporates paragraphs 1 through 57 by reference as if fully set forth herein.

59. Scott violated Ayala's equal protection rights under the Fourteenth Amendment by diluting the weight of her vote for State Attorney compared to voters in the Fifth Judicial Circuit.

60. At all relevant times, the Governor acted under color of Florida law.

61. When the Governor removed Ayala from 23 homicide prosecutions pending in her circuit, Ayala's rights were sufficiently clear that a reasonable official would understand that these actions violated those rights. Upon information and belief, the Governor did not have a good-faith belief that his actions were constitutional.

62. Ayala seeks an injunction ordering Scott to reinstate Ayala as prosecutor in all cases from which she has been removed, and attorney's fees from Scott in his individual capacity.

**COUNT III**
**Denial of Due Process (Liberty and Property Interest)—All Writs Act**

63.    Ayala incorporates paragraphs 1 through 62 by reference as if fully set forth herein.

64.    The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law [.]" U.S. Const. amend. XIV, § 1.

65.    As the democratically elected State Attorney for the Ninth Judicial Circuit, Ayala has a legitimate claim of entitlement to continue discharging the duties prescribed for her by the Constitution and laws of Florida.

66.    Ayala's legitimate claim of entitlement to continue her job, derived from the Constitution and laws of Florida, gave rise to a liberty and property interest in her continuing as State Attorney.

67.    By summarily removing Ayala from her position due to a disagreement over her prosecutorial discretion, and based on incorrect characterizations of her decision, the Governor deprived Ayala of her liberty and property interest in continuing in her position as State Attorney, in violation of the Due Process Clause of the Fourteenth Amendment.

68.    To the extent that Fla. Stat. § 27.14 purports to authorize the Executive Orders, it is unconstitutional and void.

69.    Because the Executive Orders are unconstitutional, Ayala seeks an injunction ordering the Governor to reinstate Ayala as the prosecutor in all cases from which she has been removed and enjoining him from replacing her with any other state

official.  Ayala seeks an injunction against King ordering him not to assume Ayala's duties.

## COUNT IV
## Denial of Due Process (Reputational Harm)—All Writs Act

70.     Ayala incorporates paragraphs 1 through 69 by reference as if fully set forth herein.

71.     The Governor's Executive Orders and press releases accused Ayala of making her charging decision without regard to the circumstances and of not fighting for crime victims.

72.     By removing Ayala from 23 homicide cases pending in her circuit, the Governor suggested that Ayala is not competent to discharge her constitutionally established duties, as she was elected to do.

73.     These accusations and suggestions were false and stigmatizing, were made in public, and attended Ayala's removal from Loyd's case and 22 other homicide cases in Ayala's circuit.

74.     Ayala was not given a meaningful opportunity to clear her name before she was removed from any prosecutions.

75.     As a result, Ayala has been deprived of her right to carry out her constitutionally granted duties, and she has suffered reputational harm in violation of the Due Process Clause of the Fourteenth Amendment.

76.     To the extent that Fla. Stat. § 27.14 purports to authorize the Executive Orders, it unconstitutional and void.

77.    Because the Executive Orders are unconstitutional, Ayala seeks an injunction ordering the Governor to reinstate Ayala as the prosecutor in all cases from which she has been removed and enjoining him from replacing her with any other state official.

## COUNT V
## Denial of Due Process—42 U.S.C. § 1983

78.    Ayala incorporates paragraphs 1 through 77 by reference as if fully set forth herein.

79.    Scott violated Ayala's due process rights under the Fourteenth Amendment by depriving her of her liberty and property interest in carrying out her constitutionally defined duties as she was elected to do, and by making false and stigmatizing claims in connection with removing her from 23 homicide cases, without providing her an opportunity to clear her name.

80.    At all relevant times, the Governor acted under color of Florida law.

81.    When the Governor removed Ayala from 23 homicide prosecutions pending in her circuit, Ayala's rights were sufficiently clear that a reasonable official would understand that these actions violated those rights.  Upon information and belief, the Governor did not have a good-faith belief that his actions were constitutional.

82.    Ayala seeks an injunction ordering Scott to reinstate Ayala as prosecutor in all cases from which she has been removed, and attorneys' fees from Scott in his individual capacity.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Aramis Ayala respectfully requests that this Court:

16

1.      Declare that Scott's Executive Orders violate the Fourteenth Amendment of the U.S. Constitution and are therefore void;

2.      Declare that Ayala is the proper representative of the State of Florida in Loyd's prosecution and for all other capital felonies in the Ninth Judicial Circuit;

3.      Enter permanent injunctive relief ordering Scott to re-instate Ayala as the prosecutor in all cases from which she has been removed and enjoining him from replacing her with any other state official;

4.      Enter permanent injunctive relief ordering King not to assume Ayala's duties;

5.      Award reasonable attorney's fees, litigation expenses, and costs, including fees recoverable under 42 U.S.C. § 1988; and

6.      Grant such other and further relief as the Court deems appropriate.

## JURY DEMAND

Ayala hereby demands a jury trial.


Dated:  April 11, 2017                              Respectfully submitted:

                                                    /s/ Marcos E. Hasbun
                                                    Marcos E. Hasbun
                                                    Fla. Bar No. 0145270
                                                    Mamie V. Wise
                                                    Fla. Bar No. 65570
                                                    ZUCKERMAN SPAEDER LLP
                                                    101 E. Kennedy Blvd., Suite 1200
                                                    Tampa, FL 33602
                                                    Tel: (813) 221-1010
                                                    mhasbun@zuckerman.com
                                                    mwise@zuckerman.com

Roy L. Austin, Jr.*
Amy E. Richardson*
HARRIS, WILTSHIRE &
    GRANNIS, LLP
1919 M Street, N.W., Eighth Floor
Washington, D.C. 20036
Telephone: (202) 730-1300
raustin@hwglaw.com
*Pro Hac Vice admission pending

*Attorneys for Aramis Ayala*